# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CATHERINE C. GURDEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 09-1329 |
| | ) | **Electronic Filing** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

December 2, 2010

## I.    INTRODUCTION

Plaintiff, Catherine C. Gurden ("Gurden"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the motion for summary judgment filed by the Commissioner (*Document No. 11*) will be denied, and the motion for summary judgment filed by Gurden (*Document No.* 7) will be denied to the extent that it requests an immediate award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings. The decision of the Commissioner will be vacated, and the case remanded for further proceedings.

1

## II. PROCEDURAL HISTORY

Gurden protectively applied for DIB and SSI benefits on March 16, 2007, alleging disability as of November 23, 2003. R. 105, 108, 118. The applications were administratively denied on June 29, 2007. R. 77, 82. Gurden responded on August 13, 2007, by filing a timely request for an administrative hearing. R. 89. On November 19, 2008, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge James Bukes (the "ALJ"). R. 51. Gurden, who was represented by counsel, appeared and testified at the hearing. R. 54-68. Dr. Fred Monaco, an impartial vocational expert, also testified at the hearing. R. 68-72. In a decision dated May 21, 2009, the ALJ determined that Gurden was not "disabled" within the meaning of the Act. R. 9-31. The Appeals Council denied Gurden's request for review on August 18, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Gurden commenced this action on September 29, 2009, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. Gurden and the Commissioner filed motions for summary judgment on January 29, 2010, and March 26, 2010, respectively. Doc. Nos. 7 & 11. The motions are now before the Court.

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision

or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v.*

*Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative

law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d

955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act.  The United

States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will
> not review the claim further.  At the first step, the agency will find non-disability
> unless the claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find
> non-disability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities."  §§
> 404.1520(c), 416.920(c).  At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant
> qualifies.  §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the
> list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled.  If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context. *Fargnoli v.

Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four

corners of the ALJ's decision.


## IV. THE ALJ'S DECISION

In his decision, the ALJ determined that Gurden had not engaged in substantial gainful

activity subsequent to her alleged onset date. R. 14. Gurden was found to be suffering from

fibromyalgia, osteoarthritis, anterolisthesis of the lumbar spine, low back pain, a torn meniscus

of the left knee, left knee pain, an anxiety disorder, post-traumatic stress disorder, a major

depressive disorder, diabetes mellitus and lupus. R. 14-15. Although Gurden's diabetes mellitus

and lupus were deemed to be "non-severe," her remaining impairments were found to be

"severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). R. 14-15.

The ALJ concluded that Gurden's impairments did not meet or medically equal an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. 15-17.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Gurden's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work activity as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant requires a sit and stand option at her discretion; is limited to occasionally engage in postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling; and must avoid temperature extremes and high humidity. In addition, the claimant is limited to simple routine tasks with simple instructions and must avoid changes in the work setting due to her nonexertional impairments.

R. 17. Gurden had past work experience as an assistant manager at a hot dog shop and as a shift supervisor at two fast-food restaurants.[1] R. 124. Dr. Monaco described the assistant manager job as a "skilled"[2] position and the shift supervisor jobs as "semi-skilled"[3] positions. R. 69. All three of these positions were classified at the "heavy"[4] level of exertion. R. 69. Since Gurden was found to be limited to "light"[5] work, it was determined that she could not return to her past relevant work. R. 30.

---

[1] Gurden worked as a shift supervisor for Long John Silver's and Kentucky Fried Chicken. R. 124.

[2] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good

Gurden was born on December 5, 1955, making her forty-seven years old on her alleged onset date and fifty-three years old on the date of the ALJ's decision. R. 30, 54, 105, 108. Under the Commissioner's regulations, she was classified as a "younger person" prior to her fiftieth birthday and as a "person closely approaching advanced age" subsequent to her fiftieth birthday. 20 C.F.R. §§ 404.1563(c)-(d), 416.963(c)-(d). She had the equivalent of a high school education and an ability to communicate in English. R. 30, 54, 122; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Gurden could work as a document preparer, bench assembler or hand worker. R. 31. Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[6] R. 70.

## V.     BACKGROUND

Trauma from a dog bite caused Gurden to suffer a temporary loss of vision in her left eye in May 2001. R. 168. After being seen in an emergency room, Gurden was referred to Dr. Manojkumar Patel for an ophthalmological evaluation. R. 168. On May 25, 2001, Dr. Patel performed a laser photocoagulation on Gurden's left eye. R. 167. The surgery evidently corrected the vision problems that Gurden had been experiencing. R. 160-170.

Dr. Kobra Karimkhani, a gynecologist, treated Gurden for persistent vaginal bleeding, dysmenorrhea and uterine fibroids. R. 188. Gurden underwent a hysteroscopy on January 5,

---

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

2000, because she had been experiencing dysfunctional uterine bleeding. R. 196. Benign endometrial polyps were discovered. R. 197. Gurden began to experience irregular vaginal bleeding and cramps again in January 2001. R. 197. She decided against conservative therapy when her gynecological problems began to affect her ability to work. R. 197. On February 5, 2003, Dr. Karimkhani performed a total abdominal hysterectomy and bilateral salpingo-oophorectomy on Gurden. R. 197-200. Subsequent to the surgery, Dr. Karimkhani opined that Gurden's "disability" was "not related to gynecological disorders." R. 188.

Gurden stopped working in November 2003, after sustaining an injury to her left knee. R. 55-56. A magnetic resonance imaging ("MRI") scan conducted on January 6, 2004, revealed that Gurden had suffered a torn meniscus. R. 273. Cartilage was surgically removed from Gurden's left knee on February 13, 2004. R. 210. Nevertheless, the surgery did not significantly improve Gurden's condition. R. 221-222. She continued to have chronic pain in her left knee, and she experienced difficulties when trying to climb stairs. R. 221. She also began to suffer pain in her back. R. 222. Percocet was prescribed to alleviate Gurden's back pain. R. 232.

Because of her ongoing pain, Gurden underwent a neurological examination on May 24, 2004. R. 159. The examination, which was performed by Dr. Jon Brillman, did not reveal evidence of a neurological disorder. R. 159. Dr. Brillman recommended that Gurden undergo an MRI scan of her brain, but the normal examination findings prompted Gurden's insurance carrier to deny coverage for the test. R. 158.

An endoscopy performed on August 3, 2004, revealed that Gurden had dysphagia, a hiatal hernia and an esophageal ulcer. R. 217-218. She was given a prescription for Protonix. R. 219. Meanwhile, Gurden continued to seek treatment for her leg and back impairments. She complained of increased pain in both of her legs and knees. R. 223. Dr. Jonathan E. Hottenstein

determined that Gurden was suffering from fibromyalgia and spondylolisthesis.  R. 223.  An

MRI scan conducted on August 18, 2004, showed that Gurden had "minimal" anterolisthesis of

the lumbar spine and "moderate" degenerative disc disease.  R. 267.  In a treatment note dated

August 23, 2004, Dr. Hottenstein made the following observations:

> Her complaints certainly outweigh her physical findings in my opinion.  She
> repeatedly tells me how she would not be able to go back to work.  She is
> applying for disability.  She insists that there is something wrong with her back.

R. 223.  Gurden complained of increased pain in her right knee.  R. 227.  On December 4, 2004,

an MRI scan revealed that while Gurden had chondromalacia patellae and minimal joint

effusion, her right knee was otherwise normal.  R. 271.

Between October and December of 2004, Gurden had four asymptomatic urinary tract

infections.  R. 242.  Pelvic and renal ultrasounds performed on December 22, 2004, yielded

normal results.  R. 239-240.  One day later, Dr. Robert W. Doebler performed a cystoscopy on

Gurden.  R. 238.  Gurden was instructed to take Cipro and Pyridium.  R. 237.  Nevertheless, as

of June 21, 2005, she was still experiencing urinary difficulties.  R. 235.

Dr. Alexander Kalenak referred Gurden for an electromyography ("EMG") and nerve

conduction studies on June 13, 2005, since she had been experiencing pain and numbness in her

upper extremities.  R. 232.  These tests yielded normal results.  R. 231-234.  On June 30, 2005,

testing conducted on Gurden's lumbar spine indicated that she was suffering from mild

anterolisthesis associated with degenerative disk disease.  R. 266.

Gurden sought psychiatric treatment at the University of Pittsburgh Medical Center's

Western Psychiatric Institute and Clinic ("WPIC") on March 20, 2007, complaining of

depression, sleep disturbance, crying spells and anger.  R. 538.  Dr. Kanthi Menon determined

that Gurden was suffering from depression and post-traumatic stress disorder.  R. 536.  Gurden

was provided with a prescription for Lexapro to facilitate the regulation of her mood. R. 537. Within three months, she began to experience a "remarkable decrease" in her "depressive symptoms." R. 530.

Gurden underwent a gastroscopy on June 6, 2007. R. 427-428, 454-455. It was determined that she was suffering from dysphagia, a hiatal hernia and an esophageal stricture. R. 427. She was given prescriptions for Nexium and Protonix. R. 427-428.

On September 15, 2008, Dr. Frank Kim performed a colonoscopy on Gurden. R. 474. The procedure was conducted because Gurden had a history of colonic polyps. R. 474. Dr. Kim removed a polyp from Gurden's colon. R. 475. Perianal and digital rectal examinations yielded normal results. R. 475. Nonetheless, Dr. Kim discovered that Gurden had some internal, non-bleeding hemorrhoids. R. 476.

Gurden continued to suffer from chronic dysphagia. R. 470. She underwent another endoscopy on Octover 28, 2008. R. 471. The procedure was performed by Dr. Kim. R. 471. Gurden's esophagus had to be dilated with an esophageal balloon dilator. R. 472. Although Gurden was suffering from both a hiatal hernia and chronic gastritis, her duodenum was found to be normal. R. 473.

## VI.    DISCUSSION

Dr. Richard A. Rydze performed a consultative physical examination of Gurden on May 11, 2007. R. 314-320. Dr. Rydze observed that Gurden walked with a cane in her right hand, and that she walked "with somewhat flexed knees bilaterally." R. 316. Describing Gurden's musculoskeletal conditions, Dr. Rydze stated:

> No joint swelling or muscle atrophy. No cyanosis, clubbing, or edema. Patient had painful range of motion of both wrists without any synovitis, erythema or

swelling being noted.  We were only able to flex and extend both wrists about 10 to 15 degrees at which time she complained of severe pain and she resisted any further passive range of motion.  She basically had tenderness with very light palpation over her arms, back, and neck; basically anywhere you touched her.  She had tenderness over the lumbar musculature without identifiable spasm.  The knee exam did show that the left knee showed a mild varus deformity compared to the right knee and again due to the patient's resistance range of motion was limited on passive exam because of pain.  We were only able to flex and extend the left knee from 0 to approximately 80 degrees bilaterally.  Also flexion/extension of the lumbar spine was limited to about 25 degrees at which time she could not flex any further because of pain.  She was not able to lateral flex to the right or the left because of pain.

R. 317.  Referring to Gurden's fibromyalgia, Dr. Rydze went on to observe that Gurden had "an exaggerated pain response," since "even very light palpation [had] caused her to cry out in pain basically in any area that was touched."  R. 318.

After examining Gurden, Dr. Rydze competed a "medical source statement" form detailing her physical capabilities and limitations.  R. 319-320.  Dr. Rydze reported that Gurden could frequently lift or carry objects weighing up to three pounds, occasionally lift objects weighing up to twenty pounds, and occasionally carry objects weighing up to ten pounds.  R. 319.  He indicated that she could stand or walk for up to one hour, and sit for up to six hours, during the course of an eight-hour workday.  R. 319.  Gurden's pushing and pulling abilities were deemed to be "unlimited."  R. 319.  Dr. Rydze opined that Gurden could "never" kneel, balance or climb, and that she was limited to only occasional bending, stooping and crouching.  R. 320.  He also determined that Gurden's impairments would adversely affect her ability to work around heights, moving machinery, temperature extremes and humidity.  R. 320.  Dr. Abu N. Ali, a non-examining medical consultant, reported on June 28, 2007, that Gurden could engage in a range of light work activities involving only occasional climbing, balancing, stooping, kneeling, crouching and crawling, and not involving "moderate" exposure to wetness,

humidity, extreme heat, or extreme cold temperatures. R. 322-328. Dr. Ali's assessment

"partially" reflected the findings contained in Dr. Rydze's examination report. R. 328.

At the hearing, Gurden testified that she had been using a cane since 2003. R. 60. She

explained that she could stand for only about ten minutes and walk for only about a half-block to

a full block. R. 62. Gurden declared that she could not sit for prolonged periods of time, and

that she could lift only "a gallon of milk or a bag of potatoes at most." R. 62.

Shortly before the hearing concluded, the following colloquy occurred between the ALJ

and Dr. Monaco:

> Q.    Okay. And I'd like to pose a couple hypotheticals also concerning
> claimant's age, education and work experience. Let's assume that this
> person would be limited to simple tasks, simple instructions, should avoid
> changes in the work setting and would be limited to light work, let's say
> also sit/stand work, light sit/stand work, and can occasionally engage in
> postural activities and avoid temperature extremes and high humidity.
> Would that allow the performance of any light work?
>
> A.    Your Honor, there would be jobs in the national economy to accommodate
> your hypothetical. Representative sample would be document preparer.
> The individual is converting microfiche to film to paper and vice versa.
> There are approximately 300,000 light positions in the national economy.
> A second representative sample would be bench assembly, the individual
> assembly of various products. There are approximately 737,000 light
> positions in the national economy. A third representative sample would be
> hand working occupations, which would be cutting, trimming, molding,
> casting and so on. There are approximately 115,000 light positions in the
> national economy.
>
> Q.    And how many bench assembly positions were there?
>
> A.    Approximately 737,000, Your Honor.
>
> Q.    Now if this person were limited to sedentary work and never kneel,
> balance or climb in addition to the limitations I mentioned earlier, also
> avoiding heights and moving machinery, would that allow the
> performance of any sedentary work?
>
> A.    Your Honor, the jobs I used for your first hypothetical would also be
> appropriate for the sedentary positions. Of course, the numbers would

change.  Document preparer is in the sedentary category, would be approximately 124,000 and sedentary positions in the national economy. The numbers for bench assembly would change to approximately 160,000 sedentary positions in the national economy.  And the numbers for handwork occupations would change to approximately 28,000 sedentary positions in the national economy.

R. 69-70.  After the ALJ completed his questioning of Dr. Monaco, Gurden's counsel questioned

Dr. Monaco as follows:

> Q.    Dr. Monaco, if a person had the following limitations, frequently lifting two to three pounds, occasionally lifting up to 20 pounds, frequently carrying two to three pounds and occasionally carrying up to 10 pounds, standing and walk one hour or less in an eight-hour day and sitting for six hours in an eight-hour day, would that person, number one, be capable of working on a fulltime basis?
>
> A.    Not according to Social Security regulations, no.
>
> Q.    Now assume, if you would, that the person could work, stand and walk up to two hours, and everything else stayed the same.  Would that person be limited to sedentary work with those limitations?
>
> A.    A total of two hours in an eight-hour day.
>
> Q.    A total of two hours in an eight-hour day of standing and walking and sitting six hours, and then the lifting would be as I mentioned, the lifting and carrying restrictions that I've indicated.
>
> A.    That would allow for sedentary work, yes.
>
> Q.    The maximum would be sedentary?
>
> A.    Yes.

R. 71.  Gurden's counsel closely tracked Dr. Rydze's examination report in pursuing this line of

questioning.  R. 319-320.

In determining that Gurden could perform a limited range of light work, the ALJ

purported to give "significant weight" to Dr. Rydze's opinion.  R. 25.  He construed Dr. Rydze's

examination report to be consistent with a finding that Gurden was capable of performing light work. R. 29. The ALJ also relied on Dr. Ali's assessment in determining Gurden's residual functional capacity. R. 29.

Gurden contends that the ALJ misconstrued Dr. Rydze's examination report. She argues that the ALJ's ultimate residual functional capacity determination was *inconsistent* with Dr. Rydze's examination findings. Doc. No. 8 at 16-19. Gurden further asserts that if the ALJ had actually *adopted* (rather than *mischaracterized*) Dr. Rydze's examination report, he would have been constrained to conclude that she was "disabled" within the meaning of the Act.[7] Doc. No. 8 at 16-19.

There are two bases for Gurden's argument. The first concerns Dr. Rydze's finding that Gurden could stand or walk for up to one hour, and sit for up to six hours, during the course of an eight-hour workday. R. 319. Under the Commissioner's regulations, work can constitute "substantial gainful activity" even if it is performed on a part-time basis. 20 C.F.R. §§ 404.1572(a), 416.972(a). For this reason, a claim can sometimes be denied at the first step of the sequential evaluation process if the claimant is working on a part-time basis, even if he or she has impairments which prevent him or her from performing the duties of a full-time job. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the *fifth* step of the process, however, the Commissioner cannot satisfy his burden without proving the existence of jobs in the national economy that a claimant can perform on a *full-time* basis. *Bladow v. Apfel*, 205 F.3d 356, 359-360 (8th Cir. 2000); *Kelley v. Apfel*, 185 F.3d 1211, 1213-1215 (11th Cir. 1999); *Carlisle v. Barnhart*, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005); *Grove v. Barnhart*, 382 F.Supp.2d 1104, 1111 (S.D.Iowa 2005); *Moody v. Barnhart*, 295 F.Supp.2d 1278, 1283 (N.D.Ala. 2003). In order to maintain a full-time job, an individual must be able to perform work-related tasks on a

---

[7] The Commissioner does not address this issue in his brief. Doc. No. 12 at 11-16.

"regular and continuing basis." 61 FED. REG. 34474, 34475 (1996). In this context, the term "regular and continuing basis" refers to one's ability to perform certain tasks for eight hours per day and five days per week, or on an equivalent work schedule. *Id.* Since the *total* amount of sitting, standing and walking that Gurden could do during the course of a workday amounted to *seven* hours (according to Dr. Rydze's examination report), she contends that the ALJ's purported reliance on Dr. Rydze's findings amounted to a mischaracterization of the record. Doc. No. 8 at 16-19. This argument is meritorious. Indeed, when Gurden's counsel recited the limitations which had been identified by Dr. Rydze, Dr. Monaco acknowledged that a claimant with those limitations could not work on a full-time basis. R. 71.

The second basis for Gurden's argument concerns the difference between the "light" and "sedentary" levels of exertion, and the impact that this difference has on the application of the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Medical-Vocational Guidelines" or "Rules"). At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). In certain instances, this burden can be carried solely by reference to the Medical-Vocational Rules. *Heckler v. Campbell*, 461 U.S. 458, 467-470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Where a claimant's exertional limitations render him or her "disabled" under the Medical-Vocational Rules regardless of whether he or she has nonexertional limitations, a finding of "disabled" is warranted. *Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000)(recognizing that a finding of disability may be "possible based on exertional limitations alone" where an individual has both exertional and nonexertional limitations). In determining that Gurden was

not disabled, the ALJ relied on Medical-Vocational Rule 202.21 as a framework for decisionmaking. R. 30-31. This reliance was premised on the assumption that Gurden could perform light work. Gurden points out, however, that a finding of "disabled" would have been directed by Medical-Vocational Rule 201.14 as of her fiftieth birthday if she had been limited to sedentary work.[8] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

In order to perform light work, an individual must be able to *frequently* lift or carry objects weighing up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Rydze indicated that Gurden could lift or carry ten-pound objects only on an *occasional* basis. R. 319. Consequently, Dr. Rydze's examination report did not provide evidentiary support for the ALJ's finding that Gurden could perform light work. The ALJ's reliance on Dr. Rydze's examination report to justify a finding that Gurden could perform light work constituted an impermissible mischaracterization of the evidentiary record. R. 25, 29. Had the ALJ credited Dr. Rydze's view that Gurden was limited to *sedentary* work, Medical-Vocational Rule 201.14 would have directed a finding of "disabled" as of Gurden's fiftieth birthday. 20 C.F.R. Part, 404, Subpart P, Appendix 2, Table No. 1.

Because the ALJ's residual functional capacity finding was based, in large measure, on two mischaracterizations of Dr. Rydze's examination report, the Commissioner's decision in this case is not supported by substantial evidence. The only remaining question is whether an immediate award of benefits is warranted, or whether the appropriate remedy is a remand for further administrative proceedings. A judicially-ordered award of benefits is proper only where the record has been fully developed, and where the evidence contained therein clearly points in favor of a finding that the claimant is disabled. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir.

---

[8] At the hearing, Dr. Monaco testified that the skills acquired by Gurden in her previous jobs were not transferable to sedentary work. R. 69.

2000). That standard is not satisfied in this case. Dr. Hottenstein apparently believed that

Gurden's subjective complaints were inconsistent with his examination findings. R. 223. Dr.

Brillman's neurological examination of Gurden yielded normal results. R. 158-159. Dr. Ali

opined that Gurden was capable of performing a limited range of light work.[9] R. 322-328. Dr.

Karimkhani reported that Gurden's gynecological problems were not disabling. R. 188.

Gurden's mental impairments were dramatically improved by medication. R. 530. The current

state of the record is simply not amenable to an immediate award of benefits. Under these

circumstances, the proper remedy is a vacation of the Commissioner's administrative decision,

and a remand for further proceedings. *Diaz v. Commissioner of Social Security*, 577 F.3d 500,

504-507 (3d Cir. 2009).


## VII.    CONCLUSION

During the course of the administrative proceedings, Gurden consistently pressed the

issues that she brings to the Court at this stage. Her arguments were reflected in a pre-hearing

memorandum submitted by her counsel, in her counsel's questioning of Dr. Monaco, and in her

counsel's closing argument at the hearing. R. 71-72, 156. Despite Gurden's persistent argument

that Dr. Rydze's examination report was consistent with a finding of disability, the ALJ

purported to rely on that report in finding that Gurden was *not* disabled. R. 25, 29. While the

ALJ's exhaustive evaluation of the medical evidence was certainly not the product of haste, his

---

[9] The United States Court of Appeals for the Third Circuit has admonished that it is generally improper for an administrative law judge to credit the report of a non-examining medical consultant when that report conflicts with an assessment provided by a treating physician. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Nonetheless, Dr. Rydze was a consultative examiner rather than a treating physician. The Court expresses no opinion concerning how the conflict between the assessments supplied by Dr. Rydze and Dr. Ali should be resolved. It suffices to say that the ALJ erred in failing to recognize the existence of this conflict, and in proceeding as if *both* assessments were consistent with his residual functional capacity finding. R. 29. The ALJ was required to *resolve* this conflict and explain his reasons for crediting one medical opinion over another. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003).

complete failure to confront and address the main issues in Gurden's case renders his decision unsustainable. R. 12-31.

On remand, the Commissioner will need to make new findings concerning Gurden's residual functional capacity. If it is determined that she was incapable of working on a full-time basis, an award of benefits will be warranted. If it is determined that she was capable of performing only sedentary work, a finding of disability will be warranted as of her fiftieth birthday. No opinion is expressed as to whether benefits should ultimately be awarded in this case.

Accordingly, the motion for summary judgment filed by the Commissioner (*Document No. 11*) will be denied, and the motion for summary judgment filed by Gurden (*Document No. 7*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The decision of the Commissioner will be vacated, and the case will be remanded to him for further proceedings consistent with this memorandum opinion. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Michael Colville
       Assistant United States Attorney
       Stanley E. Hilton, Esquire

       *Via CM/ECF Electronic Mail*)